UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALBERT R. MIXON | : | CASE NUMBER: |
| 940 Chinaberry Drive | | |
| Macedonia, OH  44056, | : | JUDGE: |
| Plaintiff, | : | COMPLAINT |
| vs. | : | (Jury Demand Endorsed Hereon) |
| INTERNATIONAL BROTHERHOOD OF TEAMSTERS | : | |
| 25 Louisiana Avenue, NW | : | |
| Washington, DC  20001, | | |
| | : | |
| OHIO CONFERENCE OF TEAMSTERS | | |
| 555 E. Rich Street | : | |
| Columbus, OH  43215, | | |
| | : | |
| TEAMSTERS JOINT COUNCIL 41 | | |
| 6051 Carey Drive | : | |
| Cleveland, OH  44125, | | |
| | : | |
| TEAMSTERS LOCAL 507 | | |
| 5425 Warner Road | : | |
| Cleveland, OH  44125, | | |
| | : | |
| Defendants. | | |
| | : | |

Plaintiff, Albert R. Mixon ("Mixon"), for his Complaint against Defendants, International Brotherhood of Teamster ("International"), Ohio Conference of Teamsters ("Ohio Conference"), Teamsters Joint Council 41 ("Joint Council") and Teamsters Local 507 ("Local 507") (collectively referred to as "Defendants") states as follows:

1

## THE CLAIMS

1. This Action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and §301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185. Plaintiff also asserts state law claims under Ohio Rev. Code §§4112.02 and 4112.99.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, Section 301 of the LMRA, 29 U.S.C. §185, and 42 U.S.C. §2000e-5(f).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. 185(a).

## THE PARTIES

5. Plaintiff, Albert R. Mixon, is an African American male. He is an employee as that term is defined by 29 U.S.C. §152(3), 42 U.S.C. §2000e(a),(f), and Ohio Rev. Code §4112.01(3). Mixon resides in Macedonia, Ohio.

6. Defendant, International, is an employer and labor organization as those terms are defined by 29 U.S.C. §§152(2), 152(4), 42 U.S.C. §§2000e(b), 2000e(d), and Ohio Rev. Code §§4112.01(2), and4112.01(4).  The International represents employees in the Northern District of Ohio in industries affecting commerce. The General Executive Board of the International has governing authority over the International union and its subordinate bodies (including local unions, Joint Councils and Conferences).

7. Defendant, Local 507, is an employer and labor organization as those term are defined by 29 U.S.C. §§152(2), 152(4), 42 U.S.C. §§2000e(b), 2000e(d), and Ohio Rev. Code

§§4112.01(2), and 4112.01(4). Local 507 represents employees in the Northern District of Ohio in industries affecting commerce.

8. Defendant, Joint Council, is an employer and labor organization as those terms are defined by 29 U.S.C. §§152(2), 152(4), 42 U.S.C. §§2000e(b), 2000e(d), and Ohio Rev. Code §§4112.01(2), and 4112.01(4). The Joint Council represents employees in the Northern District of Ohio in industries affecting commerce. The Joint Council coordinates the work of local unions affiliated with the International.

9. Defendant, Ohio Conference, is an employer and labor organization as those terms are defined by. 29 U.S.C. §§152(2), 152(4), 42 U.S.C. §§2000e(b), 2000e(d), and Ohio Rev. Code §§4112.01(2), and 4112.01(4). The Ohio Conference represents employees in the Northern District of Ohio in industries affecting commerce. The Ohio Conference consists of delegates from local unions and Joint Councils located in Ohio and adjoining states. The Ohio Conference was established to aid and provide educational programs, public relations, legal services, and other services to local unions and the Joint Council.

10. During all relevant times, Mixon was the only African American member of the Joint Council.

11. During all relevant times, Mixon was the only African American member of the Ohio Conference.

12. During all relevant times, Mixon was one of two African American members serving on the International General Executive Board.

## THE CONTRACTS

13. The International has adopted a Constitution. (Relevant sections of the International Constitution are attached to this Complaint as Exhibit "A"). The Constitution is a

valid contract between the International and its members, including Mixon.

14. Under the Preamble to the International Constitution, the International is required to serve the interests of the membership by maintaining a union that is free from corruption.

15. Article II, Section 2(a) of the International Constitution provides that member of the International shall "never discriminate against a fellow worker on account of race."

16. Under Article II, Section 2(h) of the International Constitution, neither the International Union nor local union or any other subordinate body, shall exclude or expel from membership or otherwise discriminate against any individual, or cause or attempt to cause any employer to discriminate against any individual, because of his race.

17. Article XIX, Section 7(b)(8) of the Constitution prohibits the International, Local, Joint Council and Conference from "retaliating or threatening to retaliate against any member for having filed disciplinary charges or otherwise participated in a disciplinary hearing.

18. Local 507 has adopted By-laws. The Local 507 By-laws constitute a contract between Local 507 and its members, including Mixon. Local 507 is bound by the International Constitution pursuant to Section XVIII of its By-laws. (A copy of the Section XVIII of the Local 507 By-laws is attached as Exhibit "B"). Therefore, the Preamble, Article II Section 2(a), Article II, Section 2(h), and Article XIX, Section 7(b)(8) of the International Constitution apply to Local 507.

19. The Joint Council has adopted a set of By-laws. The Joint Council By-laws constitute a contract between the Joint Council and its members, including Mixon. The Joint Council is bound by the International Constitution pursuant to Article I, Section 2, and Article XVI, Section 1, of the Joint Council By-laws. (A copy of these sections of the Joint Council By-laws is attached as Exhibit "C"). Therefore, the Preamble, Article II, Section 2(a), Article II,

Section 2(h), and Article XIX, Section 7(b)(8) of the International Constitution apply to the Joint Council.

20. The Ohio Conference has adopted a set of By-laws. The By-laws constitute a contract between the Ohio Conference and its delegates, including Mixon. The Ohio Conference is bound by the International Constitution pursuant to Article I, Section 3, and Article XV of the Ohio Conference's By-laws. (Copies of Article I, Section 3 and Article XB of the Ohio Conference By-laws are attached as Exhibit "D"). Therefore, the Preamble, Article II, Section 2(a), Article II, Section 2(h), and Article XIX, Section 7(b)(8) of the International Constitution apply to the Ohio Conference.

## AGENCY ACTION

21. On February 27, 2016, Mixon filed a Complaint with the Equal Employment Opportunity Commission ("EEOC") charging the International with unlawful conduct because of Mixon's race.

22. The EEOC issued Mixon a right to sue letter on May 27, 2016. (A copy of the right to sue letter is attached as Exhibit "E").

## GENERAL ALLEGATIONS

### A. MIXON'S INVOLVEMENT WITH THE INTERNATIONAL, LOCAL 507, THE JOINT COUNSIL, AND THE OHIO CONFERENCE

23. In or about 1981, Local 507 hired Mixon as a temporary employee.

24. In 1986, Local 507 hired Mixon as a fulltime business agent.

25. As an employee of Local 507, Mixon was required to be a member of the International and Local 507.

26. In 1991, Mixon was elected Vice President of Local 507 by its members.

27. Mixon continued working as a Local 507 business agent while serving as Local

5

507 Vice President.

28. As Local 507 Vice President, Mixon became a Local 507 Local Union Executive Board Member.

29. All board members of local unions comprising the Joint Council automatically become delegates to the Joint Council.

30. The Joint Council oversees and coordinates the activities of local teamster unions in Ohio and adjoining states.

31. In 1997, Mixon was elected President of Local 507 by its members.

32. In 2003, Local 507 members elected Mixon as Secretary-Treasurer of Local 507.

33. In 2006, Joint Council delegates elected Mixon as Secretary-Treasurer of the Joint Council. The Secretary-Treasurer of the Joint Council is a member of the Executive Board of the Joint Council. Mixon was paid for his services as an executive board member of the Joint Council.

34. Mixon was reelected to the position of Secretary-Treasurer of the Joint Council in 2010.

35. In 2014, delegates from local unions elected Mixon President of the Joint Council.

36. In 2006, the President of the Ohio Conference appointed Mixon to the position of Assistant to the President of the Ohio Conference.

37. Mixon was a Trustee of the Ohio Conference from 2009 through 2011.

38. In 2011, the delegates of the Joint Council elected Mixon to the position of Recording Secretary of the Ohio Conference.

39. In 2008, the International President appointed Mixon as Vice President at Large

of the International.

40. In 2011, union membership elected Mixon as Vice President at Large of the International.

41. In addition to being an employee of Local 507, Mixon was employed by the International, the Joint Council, and the Ohio Conference.

### B. MIXON IS SUBJECT TO DISCRIMINATORY AND UNLAWFUL CONDUCT

42. Until December 5, 2015, and for nearly 35 years, Mixon was not disciplined as a member or employee of the International, Local 507, the Joint Council, or Ohio Conference.

43. In late December, 2014, Caucasian board members at the Joint Council demanded that Mixon create and approve a position for Gary Tiboni.

44. Tiboni is Caucasian and a former President of the Joint Council.

45. The Joint Council's Caucasian board members demanded that Mixon permit Tiboni to take a paid position to be Mixon's assistant even though they knew the demand was out of order.

46. Mixon vetoed the motion.

47. After Mixon vetoed the motion, the International, Local 507, the Joint Council, and the Ohio Conference commenced conduct designed to punish, damage, and injure the reputation of Mixon and to remove him from leadership positions within the International, Local 507, the Joint Council, and the Ohio Conference.

48. The actions of the International, Local 507, the Joint Council, and the Ohio Conference were because of race.

49. The International, Local 507, the Joint Council, and the Ohio Conference created a hostile work environment because of race.

7

50. Following Mixon's rejection of efforts to pay Tiboni, one or more Caucasian board members made racially derogatory statements about Mixon. For instance, a Joint Council member made the following statement about Mixon: "Twelve years of slavery was not enough."

51. A Caucasian Joint Council member referred to Mixon by using racial epitaphs, including the "N word."

52. Mixon received a letter from Caucasian Joint Council board members threatening to reject all of Mixon's future motions and activities if he did not reconsider his position and hire Tiboni for the position. (A copy of the letter is attached as Exhibit "F").

53. In early 2015, Mixon determined that the Ohio Conference provided little, if any, benefit to the International and local union members and that it wasted the resources of the International and local union members. Mixon believed that all Ohio Conference board members received improper financial and other benefits without providing any benefit to local teamster unions and their members.

54. In March, 2015, Mixon proposed to the International President that the Ohio Conference be abolished based upon the Ohio Conference's inefficiencies and the Ohio Conference's inappropriate spending and waste of union resources.

55. Mixon's proposal was rejected.

56. Mixon's proposal angered the Caucasian members of the International, Local 507 executive board, the Joint Council, and the Ohio Conference, as some of the members had received inappropriate financial benefits and contributed to the Ohio Conference's waste of financial and other resources without serving the goals and mission of the Ohio Conference.

57. The Caucasian members of the Ohio conference threatened (in writing) to withdraw their support of the International President if he did not remove Mixon from a

leadership position. As a result of the threats, the International President removed Mixon from his leadership team.

58. In May, 2015, an Independent Review Board was established pursuant to an order issued by the United States District Court in <u>United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO, et al.</u> 88 CIV. 4486 (DNE) (copy attached as Exhibit "G"), to review and investigate certain activities of the International and its affiliated entities. Subsequently, the Independent Review Board investigated the Ohio Conference.

59. Mixon was subpoenaed to testify before the Independent Review Board.

60. Mixon testified before the Independent Review Board in June, 2015.

61. Due to Mixon's justified March, 2015, complaints and recommendations about the Ohio Conference, Caucasian members of the International, Local 507, the Joint Council, and the Ohio Conference accused Mixon of being a whistle blower.

62. Within one week of testifying before the Independent Review Board, Mixon was accused of sexually harassing a female employee of another local union even though he alleged conduct had occurred months prior to Mixon's testimony. Mixon was suspended by the International, Local 507, the Joint Council, and the Ohio Conference based upon the allegations.

63. Mixon was prohibited from holding any leadership positions within any of the Defendant organizations until December 31, 2017. Other union leaders had engaged in improper conduct worse than or similar to the conduct for which Mixon was accused; they did not receive the severity of punishment administered to Mixon.

64. Pursuant to the International Constitution, Mixon exhausted all of his internal union remedies. The punishment and suspension was upheld in or around late June, 2016

65. On September 25, 2015, the Independent Review Board issued findings from its investigation. The Independent Review Board determined that the Ohio Conference failed to follow its By-laws, International policies, and federal law imposed on it, concluding that the Ohio Conference was not being operated in compliance with its Constitution. Many of the findings issued by the Internal Review Board are the reasons why Mixon proposed the abolishment of the Ohio Conference. (A copy of the findings is attached as Exhibit "H").

## COUNT I
## (29 U.S.C. §185)

66. The allegations of Paragraphs 1 through 65 of this Complaint are restated and realleged as if fully rewritten.

67. The International and Local 507 By-laws are contracts which are binding on Local 507.

68. The International Constitution and the Joint Council By-laws are contracts which are binding on the Joint Council.

69. The International Constitution and the Ohio Conference By-laws are contracts which are binding on the Ohio Conference.

70. Mixon is a beneficiary to the contracts, namely, the International Constitution, the Local 507 By-laws, the Joint Council By-laws, and the Ohio Conference By-laws.

71. As a beneficiary to the contracts, Mixon has the right to seek relief for breaches of the contracts under Section 301 of the LMRA, 29 U.S.C. §185.

72. The Local 507 By-laws adopted and incorporated the International Constitution.

73. The Joint Council By-laws adopted and incorporated the International Constitution.

74. The Ohio Conference By-laws adopted and incorporated the International

Constitution.

75. Under Article II, Section 2(a) of the International Constitution, a member of the International shall never discriminate against a fellow worker on account of race.

76. Under Article II, Section 2(h) of the International Constitution, "Neither the International Union, nor any local union or other subordinate body, shall exclude or expel from membership or otherwise discriminate against any individual or cause or attempt to cause any employer to discriminate against any individual because of his race."

77. Article XIX, Section 7(b)(8) of the Constitution prohibits retaliation or threats to retaliate against any member for participating in disciplinary hearings.

78. The International Constitution requires that "the Local Unions and International … serve the interests of the membership by maintaining a union that is… free of corruption."

79. By the conduct described in Paragraphs 43-63 of this Complaint, the International, Local 507, the Joint Council, and the Ohio Conference breached the International Constitution, the Local 507 By-laws, the Joint Council By-laws, and/or the Ohio Conference By-laws.

80. The conduct of the International, Local 507, the Joint Council, and the Ohio Conference as described in this Complaint, including paragraphs 43-63, violates Section 301 of the LMRA, 29 U.S.C. §185.

81. The conduct of the International, Local 507, the Joint Council, and the Ohio Conference as described in this Complaint, including paragraphs 47-52, 55-57, and 62-63, was arbitrary, discriminatory, and in bad faith.

82. The conduct of the International, Local 507, the Joint Council, and the Ohio Conference as described in this Complaint, including paragraphs 47-52, 55-57, and 62-63, was

tainted by hostility.

83. The conduct of the International, Local 507, the Joint Council, and the Ohio Conference as described in this Complaint, including paragraphs 47-52, 55-57, and 62-63, was intentional, invidious, and directed at Mixon.

84. The conduct of the International, Local 507, the Joint Council, and the Ohio Conference disregarded Mixon's rights.

85. As a direct and proximate result of Defendants' breaches of the International Constitution, the Local 507 By-laws, the Joint Council By-laws, and the Ohio Conference By-laws, Mixon has sustained damages, including lost wages and benefits and the inability to fulfill the term of his elected offices. The exact amount of Mixon's damages will be proven at trial.

86. On or about June 30, 2016, the delegates to the International Union Convention rejected Mixon's appeal of his suspension and disqualification from holding an elected union office. The Appeals and Grievance Committee of the 29th International Convention never provided convention delegates with the details of Mixon's presentation as to why the punishment was inappropriate.

87. Mixon has exhausted all intra-union remedies.

## COUNT II
### (42 U.S.C. §2000e, et seq.)

88. The allegations of Paragraphs 1 through 87 of this Complaint are restated and realleged as if fully rewritten.

89. As an African American, Mixon is a member of a protected class.

90. At all times, Mixon was qualified to perform the duties and responsibilities of an employee and officer of the International, Local 507, the Joint Council, and the Ohio Conference.

91. Defendants refused or threatened to act on Mixon's programs, agendas, and proposals because of Mixon's race and his opposition to improper proposals made by Caucasian board members.

92. Defendants took retaliatory action toward Mixon based upon Mixon's race, suspending Mixon from employment and his elected office.

93. Based upon the conduct described in Paragraphs 43-52, 55-57, and 61-63 of this Complaint, including the use of racial epitaphs and directing offensive comments and statements towards and about Mixon, the International engaged in discriminatory conduct and created a hostile work environment based upon Mixon's race.

94. Mixon's alleged conduct did not justify the punishment and discipline imposed by the International.

95. Race was a motivating factor in the punishment imposed by the International.

96. The International treated Mixon differently from similarly situated Caucasian employees who engaged in comparable work conduct, including (without limitation);

- Only suspending a Caucasian International Vice President for fourteen (14) days for intimidating and threatening other union members; this Caucasian International Vice President was not deprived from holding or maintaining elected office;

- Permitting a Caucasian International Vice President to hold elective office after engaging in conduct determined to be unlawful and which caused a significant monetary judgment to be awarded against a local teamsters union.

- Caucasian principal officer (secretary-treasurer of a local) was not removed from office when he violated his fiduciary duties to the union and its membership.

- A Caucasian International Vice President was not removed from office even though the Independent Review Board recommended serious discipline.

97. Mixon was replaced by an individual who was not a member of a protected class.

98. Mixon suffered adverse employment action because of his race.

99. Any reason offered by the International to justify the adverse employment action has no basis in fact, did not motivate the International's actions, was a pretext for adverse employment action, and/or was insufficient to warrant the International's discriminatory conduct.

100. During the course of Mixon's employment, he opposed acts and practices made unlawful by 42 U.S.C. §2000e, et seq. and Ohio Rev. Code §§4112.02 and 4112.99.

101. The International took adverse employment action against Mixon by:

   (a) attempting coerce Mixon into hiring a Caucasian male when no position existed for that person;

   (b) threatening to reject all initiatives and proposals initiated by Mixon;

   (c) depriving Mixon of the right to perform his duties and responsibilities;

   (d) suspending Mixon's employment; and,

   (e) suspending and preventing Mixon from fulfilling the terms of his elected offices.

102. The International's conduct violates 42 U.S.C. §§2000e-2(a), (c) and 2000e-3.

103. Under 42 U.S.C. §2000e-5, Mixon has the right to seek remedies for unlawful discrimination.

104. As a direct and proximate result of the International's conduct, Mixon has sustained a loss of income and benefits, the exact amount of which will be determined at trial

105. As a direct and proximate result of the International's conduct, Mixon has been prevented from fulfilling his duties and responsibilities as an elected union officer.

106. As a direct and proximate result of the International's conduct, Mixon was deprived of his right to run for election or reelection to any union position within the International, Local 507, the Joint Council, and the Ohio Conference.

107. As a direct and proximate result of the International's conduct, Mixon sustained suffering, humiliation, and emotional distress. The exact amount of Plaintiff's damages will be proven at trial.

108. The International acted with malice or reckless indifference based upon Mixon's race.

109. Mixon exhausted his administrative remedies as described in Paragraphs 21-22 of this Complaint.

## COUNT III
(Chapter 4112 Ohio Rev. Code)

110. The allegations of Paragraphs 1 through 109 of this Complaint are restated and realleged as if fully rewritten.

111. Defendants' conduct, as described in Paragraphs 43-52, 55-57, and 61-63 of this Complaint, constitutes unlawful discriminatory practices prohibited by Ohio Rev. Code §4112.02.

112. Ohio Rev. Code §4112.02 provides that it is unlawful for an employer, because of the race of any person, to take adverse employment action or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment or any matter, directly or indirectly, relating to the individual's employment.

113. Mixon suffered adverse employment action because of his race.

114. Any reason offered by Defendants to justify the adverse employment action has no basis in fact, did not motivate Defendants' actions, and/or was insufficient to warrant Defendants' discriminatory conduct.

115. Defendants' conduct constitutes unlawful discrimination in violation of Ohio Rev. Code §4112.02.

116. Mixon possesses remedies pursuant to Ohio Rev. Code §4112.99.

117. As a direct and proximate result of Defendants' action, Mixon has sustained lost wages and benefits, and sustained suffering, humiliation, and emotional distress. The exact amount of Mixon's damages will be determined at trial, but is believed to exceed Twenty-Five Thousand Dollars ($25,000.00).

118. Defendants' actions were wanton, willful, and in conscious disregard of Mixon's rights thereby entitling Mixon to recover punitive damages.

WHEREFORE, Plaintiff, Albert R. Mixon, demands judgment as follows:

A. Under Count I, against all Defendants:

   1. Actual damages proximately caused by Defendants' breaches of the agreements identified in this Complaint;

B. Under Count II, against Defendant, International:

   1. Back pay;

   2. Reinstatement, or in the alternative Front Pay;

   3. A permanent injunction prohibiting Defendant from engaging in unlawful discriminatory practices;

   4. Compensatory damages in an amount to be proven at trial;

   5. Punitive damages in an amount to be proven at trial;

C. Under Count III, against all Defendants:

   1. Back pay;

   2. Reinstatement, or in the alternative Front Pay;

   3. A permanent injunction prohibiting Defendant from engaging in unlawful discriminatory practices;

   4. Compensatory damages in an amount to be proven at trial;

   5. Punitive damages in an amount to be proven at trial;

D. Under all Counts, against all Defendants:

1. Reasonable attorneys' fees;

2. Interest on any judgment awarded at the maximum rate permitted by law;

3. Costs of this action; and,

4. All such other and further relief which this Court deems appropriate.

Respectfully submitted,

DINN, HOCHMAN & POTTER, LLC

/s/ Steven B. Potter
STEVEN B. POTTER (0001513)
JARED S. KLEBANOW (0092018)
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio  44124
Telephone: (440) 446-1100
Facsimile:  (440) 446-1240
E-Mail: spotter@dhplaw.com
E-Mail: jklebanow@dhplaw.com
Attorneys for Plaintiff

<u>JURY DEMAND</u>

Plaintiff, Albert R. Mixon, LLC, hereby demands a trial by jury pursuant to the Federal Rules of Civil Procedure.

                DINN, HOCHMAN & POTTER, LLC

                <u>/s/ Steven B. Potter</u>
                STEVEN B. POTTER (0001513)
                JARED S. KLEBANOW (0092018)
                Attorneys for Plaintiff